# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA GUERRERO,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No.: 3:16-cv-01229-WQH-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 16]; and**<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 21].** |

Linda Guerrero ("Plaintiff") brings this action under the Social Security Act. *See* 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the Social Security Administration's ("Defendant") final decision denying her claim for Supplemental Security Income benefits under Title XVI of the Act. This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 42 U.S.C. § 636(b)(1)(B). After considering the papers submitted, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal or remand be **DENIED** and that Defendant's cross motion for summary judgment be **GRANTED**.

## I. BACKGROUND

### A. Procedural History.

On July 23, 2012, Plaintiff filed an application for Supplement Security Income ("SSI") under Title XVI of the Social Security Act. She alleges a disability onset date of August 20, 2007. AR 124-29, 140.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR 74-78, 86-92. She requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 17, 2014. Plaintiff was represented by counsel at the hearing. Plaintiff's counsel stated that Plaintiff returned to gainful employment on September 1, 2013, and thus she amended her SSI claim to reflect a "closed application period." Plaintiff seeks benefits solely for the period starting on July 23, 2012 (the date she filed the application) through September 1, 2013 (the date she returned to work). AR 37-38.

On November 20, 2014, the ALJ issued a decision. He found Plaintiff was not under a disability from July 23, 2012 through September 1, 2013. AR 20-28. On March 3, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for judicial review purposes. AR 1-4. Plaintiff timely commenced this action in federal court.

### B. Plaintiff's Background.

Plaintiff was born on October 6, 1962. AR 131. The highest grade in school she completed was the twelfth grade. AR 148. In a disability report, Plaintiff stated she worked in customer service in the retail industry from 1998 through 2011, working six hours per day for five days per week. AR 147. She assisted customers, stocked product, and served as a cashier. AR 148. In 2007, she suffered a work-related injury to her back. AR 210, 228.

Plaintiff claims that she suffers from back problems due to surgery and severe pain in her left leg, and that these conditions limit her ability to work. AR 146. She also claims she suffers from carpal tunnel syndrome. AR 286.

## C. Medical Evidence in the Record.

### 1. Plaintiff's Previous Work-Related Injury (2007).

On January 6, 2007 Plaintiff suffered a work-related injury to the lumbo-sacral junction while at the Navy Exchange. AR 210, 228. She received epidural steroid injections for lumbar radiculopathy in spring 2007. She underwent surgery for a spinal fusion L-5-S1 with laminectomy on August 29, 2007. AR 222, 228. She also had a transforaminal epidural steroid injection in February of 2008. AR 217.

### 2. Workers' Compensation Primary Treating Physician Dr. Tayyab (2008).

On March 31 2008, Dr. Neil Tayyab issued a primary treating physician's permanent and stationary report. AR 227. He reviewed Plaintiff's workplace injury, injection procedures and surgery. He reported that the "surgery went quite well and postoperatively she was walking around very nicely and had significantly reduced low back pain and also did not complain to any leg pain." AR 228. But a few weeks later, Plaintiff began experiencing pain in her lower left leg. *Id.* Dr. Tayyab then tried a number of ultimately unsuccessful methods to treat and decrease the pain. He opined that Plaintiff reached her maximum medical improvement and a permanent and stationary status regarding her lumbar spine. AR 230. He opined she should not push or pull more than 10 pounds, should not repetitively bend or twist, and should not stand or walk for more than 30 minutes at one time—or for more than two hours total—in an eight-hour workday. AR 230.

In May 2008 Dr. Tayyab opined that Plaintiff had reached maximum medical improvement, could only work four hours per day, and would not be able to work an eight-hour workday for at least three-to-six more months. AR 238. In August of 2008, he opined Plaintiff could still only work four hours per day and would not be able to work an eight-hour workday for three more months. He opined Plaintiff's daily limitations included sitting for four hours, standing for one hour, walking for one hour, and reaching and using her wrists and elbows for up to eight hours. AR 237.

### 3. Dr. Sabourin's Report – Consultative Orthopedist (May 2013).

Dr. Sabourin did a consultative exam of Plaintiff regarding the reported pain in her neck, left wrist, upper back, lower back, hips, knees and ankles. AR 253-257. Plaintiff drove herself to the appointment. AR 253. She reported that she had neck pain for two years, saw a doctor for it, and the doctor just told her to take Tylenol. *Id.* She did not have any workup done for the pain in her left wrist and hand. *Id.* Plaintiff received a lumbar fusion in August 2007. *Id.* Dr. Sabourin reported normal posture and gait, normal range of motion for the neck, pain with left lateral flexion, no spinal deformities or spasms. AR 254. As for her wrists, there was slight tenderness in the left wrist but no redness or swelling. AR 255. She tested negative for Tinel's and Phalen's tests. *Id.* Her left leg was also tender but without any inflammation in the joints, or redness, swelling or instability. *Id.*

Based on his examination Dr. Sabourin concluded that Plaintiff could lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently, could stand, sit or walk for six hours out of an eight-hour day, could climb, stoop, kneel and crouch occasionally, and had no manipulative limitations or need for assistive devices to ambulate. AR 256.

### D. **Vocational Evidence**.

#### 1. **Plaintiff's Past Work.**

In a disability report Plaintiff stated she worked in customer service in the retail field from 1998 to 2011. AR 147. The detailed earnings query shows Plaintiff worked at Macy's in 1998, at the Navy Exchange Service Command in 2000, at Macy's in 2003, and at J C Penney's in 2004. AR 134. Plaintiff worked at the Navy Exchange in 2005, and then at the Navy Exchange and Kohl's Department Stores in 2006.

In January of 2007, while working at the Navy Exchange, Plaintiff sustained a workplace injury. AR 135, 210, 228. The detailed earnings query does not show any reported earnings for 2008 and 2009. AR 135.

The detailed earnings query also shows Plaintiff worked at the Marine Corps Community Services, Marine Corps base in 2010. AR 50, 135. Plaintiff stated in a

4

disability report that she was laid off from work for reasons unrelated to her alleged impairments in April of 2011. AR 146-147; Exs. 5D, 7E. The detailed earnings query does not show any reported earnings for 2012 and 2013. But Plaintiff testified at the hearing that on September 1, 2013, she began working again as a cashier at Purdy's. AR 41-42, 48.

### 2. Vocational Expert Testimony.

Vocational Expert John Kilcher testified at the hearing. AR 46. He reviewed the file and exhibits to acquaint himself with Plaintiff's vocational background. *Id.* He characterized Plaintiff's vocational background as a Customer Service Clerk at the light level, semi-skilled, SVP 4. AR 47. He testified that an individual with Plaintiff's background in age, education and work experience—who was limited to light work and to only occasional postural activities but able to do frequent bilateral handling and fingering—would be able to return to her past work. *Id.* He also characterized Plaintiff's work as Retail Customer Service, light level, semi-skilled, SVP of 3. AR 49.

Upon questioning by Plaintiff's attorney Mr. Kilcher testified that an individual who is limited to lifting no more than 10 pounds and standing and walking no more than two hours out of an eight hour day would not be able to do their past work or any other work at the light level; any work would have to be sedentary. AR 49.

### E. **Plaintiff's Testimony at the Hearing**.

Plaintiff testified that she could not work during her alleged period of disability because of pain, tingling, and numbness in her left leg and pain due to carpel tunnel in her hands. AR 39. She testified that during the period she could not work, she could only be on her feet for 15 to 20 minutes before it began to hurt, could only sit for about 20 minutes because her lower back hurt, and at most could lift 10 pounds. AR 45.

Plaintiff also testified about her daily activities. She said that she could wash her hair, feed herself, dress and tie her shoes "at a certain level." AR 40. When asked what she meant by "a certain level," she clarified that though she would bend over to tie her shoe, it would cause pain because of her back surgery. *Id.* She said she could tie her

5

3:16-cv-01229-WQH-NLS

shoes "here and there," and that she did not use buttons or clasps to fasten her bra. *Id.* She testified she could not drive a car because of the pain in her left leg, and her son drove her around. AR 40-41, 45. She would cook meals using a microwave, and her son would cook and bring her food. *Id.* Her son did her laundry for her. AR 41.

When the ALJ asked why she believed she could not work in July of 2012, Plaintiff's attorney clarified that Plaintiff alleged a disability onset date of 2007 and that July 23, 2012 is only her SSI application date. AR 43. The ALJ then asked Plaintiff if she asserts she has not been able to work since 2007 because of her back, to which Plaintiff responded yes. AR 43. Later, the ALJ noted that Plaintiff's earnings records showed she worked in 2010. AR 50. He asked where she worked during that time period. *Id.* Plaintiff's attorney noted that she worked at the Marine Corps Community Services, and Plaintiff stated she worked part-time as a cashier at that time. *Id.*

Plaintiff then testified that her hands began to hurt around 2012. *Id.* She testified she did not do any physical therapy on her hands and that she saw a doctor who twice told her he would order a brace for her hands. AR 44. But she never obtained the brace and the doctor gave her Ibuprofen and muscle relaxers instead. *Id.*

## II. THE ALJ'S DECISION

### A. The Sequential Process.

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 1382c(a)(3). The Social Security regulations establish a five-step sequential evaluation to determine whether an applicant is disabled under this standard. 20 C.F.R. § 416.920(a).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, then at step two the ALJ must determine whether the applicant suffers from a severe impairment or a combination of impairments. *Id.* § 416.920(c). If the impairment is severe, at step three the ALJ must determine

6

whether the applicant's impairment or combination of impairments meets or equals an impairment contained under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(d). If the applicant's impairment meets or equals a listing, he or she must be found disabled. *Id.*

If the impairment does not meet or equal a listing, the ALJ must determine the applicant's residual functional capacity. Then, the ALJ must determine at step four whether the applicant retains the residual functional capacity to perform past relevant work. *Id.* § 416.920(f). If the applicant cannot perform past relevant work, at step five the ALJ must consider whether the applicant can perform any other work that exists in the national economy. *Id.* § 416.920(g).

The applicant carries the burden to prove eligibility from steps one through four but the burden at step five is on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### B. **Substance of the ALJ's Decision.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from July 23, 2012 through September 1, 2013. AR 22. At step two, the ALJ found Plaintiff's back disorder and carpal tunnel syndrome constituted severe impairments. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that would meet or medically equal any listed impairments. The ALJ next found Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.927(b), except she can occasionally perform postural activities and can do frequent fingering and handling with the bilateral upper extremities. AR 23. At step four, the ALJ found Plaintiff could perform her past relevant work as a customer service clerk and as a retail sales clerk. AR 27. The ALJ further stated that this past relevant work does not require her to perform work-related activities precluded by her residual functional capacity. *Id.* The ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act since July 23, 2012, the date she filed her application, through September 1, 2013.

7

## III. LEGAL STANDARD

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standard. *Id.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate support to support a conclusion." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 2003). When the evidence is susceptible to more than one reasonable interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). It is not the court's job to reinterpret or re-evaluate the evidence, however much a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Id.*

## IV. DISCUSSION

### A. Whether Plaintiff's Past Relevant Work Amounted to Substantial Gainful Activity.

At step four, the ALJ concluded that Plaintiff performed past relevant work. Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). An individual engages in substantial gainful activity if she does significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed she demonstrated the ability to engage in substantial gainful activity. 20 C.F.R. § 416.974. Here, the ALJ found that Plaintiff performed the work within 15 years of the date of the ALJ's decision for a sufficient length of time to learn and provide average performance, and did so "at the level of substantial gainful activity." AR 28.

Plaintiff argues the ALJ's conclusion at step four is not supported by substantial evidence because the record does not demonstrate a level of "substantial gainful activity." Dkt. 16-1 at 10-12. Specifically, she argues that her past earnings did not meet the

8

monthly minimum monetary amount set in the regulations. *Id.* Defendant argues that Plaintiff waived the substantial gainful activity argument because she failed to raise it in the underlying proceedings, and that in any event, substantial evidence supports the ALJ's finding of substantial gainful activity. Plaintiff does not counter the waiver argument but says this court should review the issue because the ALJ cited to the earnings record and earnings query in his decision.

Plaintiff was represented by counsel at the administrative hearing and on appeal to the Appeals Council. Social Security claimants, when represented by counsel, "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir.1999). That is because the ALJ, rather than the district court, is "in the optimal position" to evaluate the evidence and apply it to the law. *Id.* The court will "only excuse a failure to comply with this rule when necessary to avoid a manifest injustice[.]" *Id.* A manifest injustice occurs when a plaintiff did not have a "reasonable basis for thinking that there was a conflict at the time of the hearing." *Padlo v. Berryhill*, 2017 WL 735734, *5 (E.D. Cal. Feb. 24, 2017) (finding a manifest injustice would arise where counsel did not have an advance opportunity to study the jobs the vocational expert cited for possible inconsistencies with the ALJ's hypotheticals).

If an issue is raised before the ALJ but not with the Appeals Council that issue is not waived in the district court. *Sims v. Apfel*, 530 U.S. 103, 112 (2000); *Edlund v. Massanari*, 253 F.3d 1152, 1160 n.9 (9th Cir. 2001). And if an issue is raised before the Appeals Council but not with the ALJ that issue is likewise not waived in the district court. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). But if an issue for which the plaintiff bears the burden of proof is not raised before either the ALJ or the Appeals Council, and the claimant—who was represented by counsel—had a reasonable opportunity to raise it, the issue is waived. *See Simpson v. Colvin*, 2016 WL 3091487, *1 (C.D. Cal. May 31, 2016) (explaining the nuances of the case law on waiver in a social security case); *see Brewer v. Colvin*, 2016 WL 4491498, *4 (C.D. Cal. Aug.

24, 2016) (finding that if an issue arises under Step 5 where the Commissioner bears the burden of proof the plaintiff's failure to raise it with the ALJ or before the Appeals Council is not a waiver because the ALJ's ruling could not have been anticipated).

Here, Plaintiff carried the burden at Step 4 of showing that she did not retain the residual functional capacity to perform past relevant work. 20 C.F.R. § 416.920(b); *Celaya*, 332 F.3d at 1180. The Administrative Record included Plaintiff's earnings records, which showed that her annual earnings ranged from $581.15 to $7688.51 for the years she actually worked between 1999 and 2014. AR 137. It also included her disability report, where she reported that she earned $8.25 per hour, while working six hours per day for five days a week. AR 147. Plaintiff's attorney reviewed her earnings record and discussed it at the hearing. But she never even mentioned that her past work did not demonstrate substantial gainful activity:

> **Examination of Vocational Expert by Claimant's Attorney**
> Q: I noticed in her earnings record she's always working at retail stores like Macy's or Old Navy. Was there a reason that you just didn't use retail sales clerk?
> ***
> Q: Okay, if I am going to do a hypothetical individual, I'm going to use…the treating source's opinion, and I limit that individual to limit no more than 10 pounds, standing and walking no more than two hours out of an eight hour day. **Is this individual able to do their past work or any other work at the light level?**
> A: No, they could not. That would be at a sedentary type work.

AR 48-49 (emphasis added).

Based on the above questioning it appears that Plaintiff advocated for a finding that the earnings constituted substantial gainful activity because her question centered on whether Plaintiff could return to her past work. Further, Plaintiff's counsel did not object to the ALJ asking about Plaintiff's current capabilities given her past work experience:
///

10

| | | |
|---|---|---|
| 1 | Q: | Do you have enough information to characterize Ms. Guerrero's vocational background? |
| 2 | A: | Yes I do. She worked as a customer service clerk….Classified at the light level and that's how the claimant had performed it and it's semi-skilled….That's all her past work. |
| 3 | | |
| 4 | | |
| 5 | Q: | So, that's light and. |
| | A: | Semi-skilled. |
| 6 | Q: | Semi-skilled. If we were to assume an individual similar to Ms. Guerrero in age, education, and work experience that was, excuse me, limited to light work. Further limited to only occasional postural activities, and frequent bilateral handling and fingering **would that individual be able to return to Ms. Guerrero's past work?** |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | A: | Yes, they could. |
| | Q: | **And would there be other work as well?** |
| 12 | A: | **Yes, there would be.** |
| 13 | Q: | And could you characterize for us the cashier work that Ms. Guerrero is doing now? |
| 14 | *** | |
| 15 | A: | Okay. Her job would be classified as cashier II …at the light level. And unskilled. |
| 16 | | |

AR 47-48 (emphasis added).

The ALJ's questioning to the Vocational Expert centered on Plaintiff's ability to perform past relevant work. AR 46-50; *see* AR 23 (assessing Plaintiff as retaining the residual functional capacity to perform a limited range of light work). If Plaintiff had no past relevant work because she did not have any substantial gainful activity, the ALJ's examination would have focused on whether Plaintiff could perform any other work that exists in the national economy. 20 C.F.R. § 416.920(g). Plaintiff's counsel did not object to the ALJ's examination based on ability to return to past work.

In sum, Plaintiff's counsel at the hearing expressly admitted that she reviewed Plaintiff's earning records. She herself questioned Plaintiff regarding her past work. She did not object to the ALJ's questioning regarding past work. If Plaintiff in fact wanted to argue that she had no past relevant work it was her burden to do so. She had the notice

11

and the opportunity to address it at the administrative hearing and in the Appeals Council filing. She did neither. The court, therefore, finds that Plaintiff waived this issue, and that no manifest injustice can occur from this finding of waiver because Plaintiff had a "reasonable basis for thinking that there was a conflict at the time of the hearing." *Padlo*, 2017 WL 735734, at *5; *see Phillips v. Colvin*, 593 Fed.Appx. 683, 684 (9th Cir. 2015) (finding that Plaintiff's failure to challenge a finding that he engaged in substantial gainful activity was waived when he failed to raise it at the administrative level through counsel and did not demonstrate a manifest injustice excusing the failure).

### B. **Whether The ALJ Properly Considered Plaintiff's Testimony and Statements.**

A claimant's subjective symptoms must be considered in a disability evaluation. 20 C.F.R. § 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). In deciding whether to credit a claimant's testimony about subjective symptoms or limitations, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281. Under the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281. If this test is satisfied, and there is no affirmative evidence that the claimant is malingering, then the ALJ must determine the credibility of the claimant's subjective complaints. At the second step, the ALJ may reject the claimant's testimony about the severity of symptoms as long as he gives specific, convincing reasons for doing so. *Batson*, 359 F.3d at 1195; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 24. But he found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. AR 24. Specifically, they were inconsistent with

12

the medical record and with her reported activities of daily living and work history. Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff is not credible because the ALJ relied on evidence of activities that did not contradict her testimony or did not have any application to a work setting, did not confront her on any inconsistent statements, and drew improper inferences about her truthfulness regarding her work history and failure to seek medical treatment for her symptoms. Dkt. 16-1 at 12-14. Defendant argues that the ALJ made specific credibility findings as to why he discredited her testimony and thus, substantial evidence supports his decision.

### 1. Consistency with the Medical Record.

An ALJ must determine the extent to which a claimant's symptoms "can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [those] symptoms affect [the claimant's] ability to work." 20 C.F.R. § 404.1529(a). But those statements alone cannot be decisive on a disability claim. 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

Plaintiff argues that the ALJ failed to compare Plaintiff's testimony with the findings of Dr. Tayyab, the doctor who treated her in 2008 for a workers compensation injury. Dr. Tayyab opined that Plaintiff reached her maximum medical improvement and a permanent and stationary status regarding her lumbar spine and should not stand or walk for more than 30 minutes at one time—or for more than two hours total—in an eight-hour workday. AR 230. In August of 2008, he opined Plaintiff could still only work four hours per day. AR 237. These reports issued approximately four years before Plaintiff's disability application of July 23, 2012.

Despite the four-year delay between Dr. Tayyab's findings and the disability application, the ALJ considered Dr. Tayyab's opinion in order to view the record in the light most favorable to Plaintiff. AR 24. The ALJ also cited to other medical evidence

13

and found that Plaintiff's allegations regarding the severity of her symptoms and limitations were diminished in light of the objective evidence in the record. Those cited records include:

- All radiological findings note that the spinal fusion is stable and the hardware is well placed. AR 25 (citing Exs. 1F, p.42; 3F; 5F, p.62).
- At times Plaintiff reported no back pain or tenderness in her lumbar spine. AR 25 (citing Ex. 4F, pp. 13, 15-16).
- Between the time that Dr. Tayyab found Plaintiff had met maximum medical improvement and Plaintiff's application date, she worked part time and reported that she stopped working because she was laid off, as opposed to stopping work due to physical limitations. AR 25 (referring to AR 42, 146).
- Plaintiff said she did not receive particularly helpful medical treatment but that she was ultimately able to return to work because she had relaxed and taken care of herself. AR 25 (referring to AR 42).
- Dr. Sabourin, a consultative orthopedist, examined Plaintiff and opined that she could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand, walk and sit for six hours in an eight-hour day, and could occasionally climb, stoop, kneel and crouch, all of which is consistent with Plaintiff's longitudinal treatment record. AR 25-26 (citing Ex. 3F).
- Dr. Tayyab opined that Plaintiff reached a permanent and stationary status regarding her lumbar spine but she is now working at a functional level that is greater than that status. AR 27.

The court finds that the citations to this medical evidence in the record are specific enough to constitute substantial evidence to support the ALJ's credibility finding. *See* Social Security Ruling 96-7p (credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements"). Further, it was appropriate for the ALJ to consider this evidence when assessing Plaintiff's credibility. *See Smolen*, 80 F.3d at 1284 (finding ALJ can consider objective medical evidence when assessing credibility); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

///

Further, the ALJ noted that Plaintiff was twice prescribed a splint for her carpal tunnel but never got one, waited one year in between doctor visits to complain about carpal tunnel, and returned to work three months after she was prescribed a splint for the second time. AR 25 (citing Ex. 4F, pp.22, 26). The ALJ found that her accounts of disabling pain and dysfunction did not correspond with the course of medical treatment regarding carpal tunnel. AR 24. Further, there is no argument or evidence that Plaintiff lacked the medical insurance or funds to follow up on her carpal tunnel or procure a splint, as twice prescribed. The court finds that the ALJ's finding is reasonable here. *See Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (finding unexplained failure to seek treatment can cast doubt on sincerity of claimant's testimony); *Stanistreet v. Chater*, 21 F.Supp.2d 1129, 1136 (C.D. Cal. 1995) (finding the absence of medical treatment over a nine-month period suggested the claimant's "subjective complaints of worsening symptoms and chronic, disabling pain are exaggerated").

In sum, the ALJ points to objective medical evidence that supports his finding that Plaintiff's allegations regarding the severity of her symptoms are greater than what is demonstrated by the objective medical evidence in the record.

### 2. Consistency with Reported Activities of Daily Living.

The ALJ discredited Plaintiff's testimony because he found it inconsistent with her complaints of disabling symptoms and limitations. AR 24. In assessing the credibility of these subjective complaints, the ALJ may consider the claimant's daily activities. *Tonapetyan v. Halter*, 242 F.3d 1144, 148 (9th Cir. 2001); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529(c)(3)(i). Differences between a claimant's allegations and her conduct qualifies as substantial evidence that may be used in a credibility determination. *Light v. Soc. Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997). The court is aware, though, "that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. July 14,

2014). But where a level of activity is inconsistent with a claimant's claimed limitations, then the activities bear on a claimant's credibility. *Id.*

Here, Plaintiff complained of limitations due to back pain, carpal tunnel and pain in her left leg during the relevant period. AR 39-41. But her daily activities during that time included preparing simple meals, taking care of her three-year-old granddaughter, and living free of any assistance from anyone except for driving and laundry. AR 24, 39-41, 45, 158-160. She also did some housework, grocery shopping and sewing. *Id.* Considering his citations to her reported daily activities, the ALJ's finding that Plaintiff's daily activities were inconsistent with the claimed limitations is reasonable and supported by substantial evidence cited to in the record. Thus, the court may not "second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting that there may be other reasonable interpretations of a claimant's testimony but that if the ALJ's finding is reasonable and supported by substantial evidence then the court cannot second-guess it); *see Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (recognizing a claimant's daily activities were self-limited and a lifestyle choice).

### 3. Consistency of Statements Regarding Work History.

The ALJ discredited Plaintiff's testimony for her inconsistencies regarding work history. AR 24. For example, at the hearing both she and her attorney said she did not work from 2007 to 2013. AR 24, 42, 43, 44. But then when the ALJ asked her about her earnings record for 2010 where she earned $7,588, she admitted she had worked as a part-time cashier during that time for the Marine Corps Community Services. AR 50, 135. Another earnings record showed that she also worked in 2011, and in her disability questionnaire she reported that she lost that job due to a layoff rather than due to any disability. AR 24 (citing Exs. 5D, 7E, AR 146-147). Even though these activities did not occur during the application period, they indicated to the ALJ that:

> [Plaintiff's] daily activities have, at least at times, been somewhat greater than the claimant has generally reported. Additionally, the fact that the claimant provided inaccurate information on a matter so integral to determining disability

16

suggests that much of what the claimant has alleged may be similarly unreliable.

AR 24.

Plaintiff argues that any inconsistent statements are irrelevant because the ALJ failed to confront Plaintiff about these statements. Relying on immigration cases, Plaintiff argues the ALJ had to find deliberate deception to reject her statements. But that is not the law in Social Security cases, and the court does not condone Plaintiff's attempt to shift the burden of being truthful and consistent to Defendant. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (discrediting testimony due to inconsistent statements). Accordingly, the court finds that the ALJ cites to substantial evidence to support his discrediting of Plaintiff's testimony based on her inconsistent statements.

## V. **CONCLUSION**

The court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross motion for summary judgment be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties by **May 11, 2017**. The document should be captioned "Objections to Report and Recommendation."
Any response to the objections shall be filed and served by **May 18, 2017**. The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 26, 2017

Hon. Nita L. Stormes
United States Magistrate Judge